**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|                                                          |   |                        |
|----------------------------------------------------------|---|------------------------|
| IN RE MELVIN THOMPSON,                                   | : | CIVIL ACTION NO.       |
|     Debtor.                          | : | 3:14-CV-1094 (JCH)     |
|                                                          | : |                        |
| ‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑            | : |                        |
|                                                          | : |                        |
| MARTIN MENDOZA,                                          | : |                        |
| MEXICO CONSTRUCTION AND                                  | : |                        |
| PAVING, LLC,                                             | : |                        |
|     Plaintiffs-Appellees,            | : |                        |
|                                                          | : |                        |
|     v.                               | : |                        |
|                                                          | : |                        |
| MELVIN THOMPSON,                                         | : |                        |
|     Defendant-Appellant.             | : | MARCH 20, 2015         |
|                                                          | : |                        |

**RULING**

On May 23, 2014, the United States Bankruptcy Court (Manning, C.J.) granted the Motion for Summary Judgment of appellees Mexico Construction and Paving, LLC ("Mexico Construction" or "the Company") and Martin Mendoza (collectively "the appellees") and denied Thompson's Cross-Motion for Summary Judgment. See Judgment (Bankr. Doc. No. 85).[1] The Bankruptcy Court determined that $23,161 of judgment debt corresponding to counts of breach of contract and fraud in a suit against Thompson was nondischargeable under section 523(a)(2)(A) of title 11 of the United States Code, see Memorandum of Decision (Bankr. Doc. No. 84) at 13–14, and that $45,000 of judgment debt corresponding to a count of vexatious litigation in the same suit was nondischargeable under section 523(a)(6) of the same title, see id. at 18–19.

---

[1] All references to a "Bankr. Doc. No." refer to documents on the docket of the underlying adversary proceeding before the Bankruptcy Court. See Mexico Construction & Paving, LLC v. Thompson (In re Thompson), Ch. 7 Case No. 11-32924, Adv. No. 12-03065 (JAM) (D. Conn.). Although not filed with this court, all such documents were indicated in the Designation of Items (Doc. No. 2).

The Bankruptcy Court made both of these determinations on the basis of issue preclusion/collateral estoppel from the jury verdicts that produced these two judgment debts.  Finally, the court concluded that $1,698.20 of judgment debt corresponding to an award of costs and fees in the case that produced the aforementioned debts was nondischargeable as ancillary to the first two judgment debts, see id. at 22.

Pending before the court is an appeal by the debtor, Melvin Thompson, from the summary judgment as to the determinations regarding the first two judgment debts.

I.    **FACTS**[2]

In March 2006, Martin Mendoza and Mexico Construction ("the appellees") entered into an agreement ("the Settlement Agreement") (Bankr. Doc. No. 51 at 3–9) with Melvin Thompson ("Thompson" or "the appellant") to settle a Connecticut Superior Court case captioned Thompson v. Mendoza et al., Case No. AAN-CV-05-4005125-S. See Countercomplaint (Bankr. Doc. No. 81-1) (countercomplaint by Martin Mendoza and Mexico Construction in the aforementioned case raising counterclaims in nine counts).  The Settlement Agreement provided that Thompson would either pay the defendants $21,000 on or before May 1, 2006, or make installment payments totaling $23,160 on a schedule concluding on or before April 1, 2007.  See Settlement Agreement ¶ 2.  The agreement contained a broad mutual release of claims among the parties.  See id. ¶ 3.

---

[2] For the purposes of this appeal of a grant of summary judgment, the court accepts as true the undisputed facts in the parties' Local Rule 56(a) Statements submitted to the Bankruptcy Court and views any disputed facts in the light most favorable to appellant Melvin Thompson, the nonmoving party in the proceedings before the Bankruptcy Court.

In April 2007, the appellees sued Thompson in state court for, <u>inter alia</u>, breach of contract (alleging that Thompson had failed to comply with the Settlement Agreement); fraud (alleging fraud both surrounding the parties' interactions prior to the negotiations related to the Settlement Agreement and also surrounding the negotiation and execution of the Settlement Agreement); and vexatious litigation (based on Thompson's suing the appellees in a separate federal case that was dismissed with prejudice).  <u>See</u> April 2007 Action Complaint (Bankr. Doc. No. 51 at 11); <u>see also</u> <u>Mexico Constr. et al. v. Thompson et al.</u>, Case No. X10-UWY-CV-07-5011712-S (Conn. Super. Ct.) ("the April 2007 Action").  At the conclusion of trial, a jury returned a verdict in favor of the appellees on all counts, awarding, <u>inter alia</u>, $23,160 on the claim for breach of contract, $1 on the claim for fraud, and $45,000 on the claim for vexatious litigation.  <u>See</u> Jury Interrogatories (Bankr. Doc. No. 52 at 5).  The court entered a judgment incorporating these parts of the verdict.  <u>See</u> Local Rule 56(a)(1) Statement of Facts (Bankr. Doc. No. 50) ¶¶ 17, 19; Statement Pursuant to Local Rule 56(a)(2) ¶¶ 17, 19.

On November 21, 2011, Thompson filed a voluntary petition under the provisions of Chapter 7 of the Bankruptcy Code.  <u>See</u> Memorandum of Decision at 2; <u>In re Thompson</u>, Ch. 7 Case No. 11-32924 (D. Conn.).  On August 10, 2012, the appellees sued to have the judgment debt related to the presently-disputed claims adjudged nondischargeable in the bankruptcy proceedings.  <u>See</u> Complaint (Bankr. Doc. No. 1).  Between July 2013 and February 2014, the parties submitted various filings in connection with their cross-motions for summary judgment.  On May 23, 2014, the Bankruptcy Court granted summary judgment to the appellees, deciding that the

doctrine of issue preclusion required the conclusion that the debt was nondischargeable.[3] The present appeal followed.

## II.   STANDARD OF REVIEW

A bankruptcy court's decision to grant summary judgment is reviewed de novo. See Bank of N.Y. v. Treco (In re Treco), 240 F.3d 148, 155 (2d Cir. 2001).  Granting a motion for summary judgment is proper only if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  O'Hara v. Nat'l Union Fire Ins. Co., 642 F.3d 110, 116 (2d Cir. 2011).  Thus, the court's role in deciding such a motion "is to determine whether genuine issues of material fact exist for trial, not to make findings of fact."  Id.  In making this determination, the court "must resolve all ambiguities and draw all inferences against the moving party."  Garcia v. Hartford Police Dep't, 706 F.3d 120, 127 (2d Cir. 2013).

The moving party bears the burden of establishing the absence of genuine issues of material fact.  Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).  If the moving party meets that burden, the party opposing the motion will only prevail if it sets forth "specific facts" that demonstrate the existence of "a genuine issue for trial."  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ.

---

[3] The court notes that the applicable verdicts were for $23,160, $1, and $45,000, and that the fees awarded were $1,698.20, and that these amounts totalled to $69,859.20.  The court further notes that the judgment in the Superior Court appears to have been for $500 more—$70,359.20.  See Judgment.  This discrepancy or clerical error may be connected to some confusion at the hearing during which the state court judge explained what the judgment amount would be.  See Transcript of Motions/Verdict Hearing (Bankr. Doc. No. 52 at 16).  As far as this court can discern, the appellees made no showing as to the nondischargeability of the $500 corresponding to the difference between, on the one hand, the sum of the jury awards ratified by the Superior Court and the costs and fees awarded and, on the other hand, the total judgment awarded.  However, Thompson did not raise this issue on appeal. While the court can discern no basis from which to conclude that the $500 is nondischargeable, it will be appropriate for the Bankruptcy Court to resolve this issue on remand.

P. 56(e)).

For summary judgment purposes, a genuine issue exists where the evidence is such that a reasonable jury could decide in the non-moving party's favor. <u>See</u> <u>Rivera v. Rochester Genesee Reg'l Transp. Auth.</u>, 702 F.3d 685, 693 (2d Cir. 2012); <u>see also</u> <u>Rojas v. Roman Catholic Diocese of Rochester</u>, 660 F.3d 98, 104 (2d Cir. 2011) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986)) (stating that the non-moving party must point to more than a mere "scintilla" of evidence in its favor). Mere conclusory statements or allegations are not sufficient to defeat a summary judgment motion. <u>Davis v. N.Y.</u>, 316 F.3d 93, 100 (2d Cir. 2002).

## III.   DISCUSSION

### A.   <u>Breach-of-contract and fraud verdicts</u>

A debt is nondischargeable under section 523(a)(2) if it is a "debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . [inter alia] false pretenses, a false representation, or actual fraud . . . ." 11 U.S.C. § 523(a)(2)(A). The jury in the April 2007 Action found that Thompson was liable to the appellees for $1 for fraud and for $23,160 for breach of contract. <u>See</u> Transcript of Motions/Verdict Hearing; Judgment. The Bankruptcy Court concluded on the basis of these verdicts and the doctrine of issue preclusion that it was appropriate to enter a summary judgment that the judgment debt corresponding to these two verdicts ($23,161) is nondischargeable under section 523(a)(2). <u>See</u> Memorandum of Decision at 8–14.

Thompson proffers two independent arguments in support of the conclusion that this judgment of the Bankruptcy Court was incorrect.[4]  The appellees oppose these two arguments and also offer an alternative ground for affirming the summary judgment. The court treats these three arguments in turn.

        1.      Whether Thompson "obtained" a benefit

Thompson's first argument is that it was error for the Bankruptcy Court to grant summary judgment to the appellees because the debt that Thompson incurred to the credit of the appellees, and which the appellees now seek to have categorized as nondischargeable, did not result in Thompson's "obtain[ing]" a benefit within the meaning of section 523(a)(2) of title 11 of the United States Code.  See Appellant's Brief at 4–5.  Specifically, Thompson's contention is that he did not "obtain" anything covered within the meaning of section 523(a)(2) because "[n]o money or property changed hands as a result of the [settlement] contract between [Mendoza and Mexico Construction] and [Thompson]."  Id. at 5.

Thompson advances this argument without citing any case law, perhaps because Supreme Court case law forecloses his attempted circumscription of the statute.  The appellees correctly point out the undisputed fact that the subject debt was incurred in exchange for the release of legal claims.  See Appellee's Brief at 3–4; Settlement Agreement ¶¶ 3.1, 3.2 (mutual releases from claims).  The reasoning in both the

---

[4] At oral argument, Thompson raised an additional argument on this issue—specifically, that the Bankruptcy Court actually should have granted summary judgment to him (and not just denied it for the appellees) because the one dollar fraud verdict establishes, as a matter of issue preclusion, that no more than that one dollar was obtained by fraud.  Because of the meaningful gaps in the record—essentially the same reason that this court concludes that summary judgment for the appellees was inappropriate—this argument appears to be without merit.  However, the court does not reach this argument because, by failing to address it at all in his brief before this court, Thompson has waived it.  See discussion of waiver Part III.B infra.

majority and the dissenting opinion in <u>Archer v. Warner</u> is predicated on the proposition that the release of claims in a settlement agreement is a benefit that satisfies section 523(a)(2)'s "obtained" requirement.  538 U.S. 314 (2003); <u>see also</u> <u>Barrett v. U.S.</u>, 798 F.2d 565, 575 (2d Cir. 1986).  The court thus rejects this argument.

2.    Whether issue preclusion applies

Thompson's second argument is that the Bankruptcy Court's conclusion that issue preclusion resolved the issue of dischargeability was erroneous because the issues actually litigated and necessarily determined in the prior litigation have not been proven to be identical to those in the present litigation.  Specifically, while Thompson concedes that the fraud verdict establishes that $1 of the judgment debt owed by Thompson to the appellees falls within the category of debt described in section 523(a)(2), <u>see</u> Memorandum of Law in Support of Objection to Motion for Summary Judgment and Cross-Motion for Summary Judgment (Bankr. Doc. No. 73-4) at 3, he contends that nothing establishes that the remaining $23,160 of debt (corresponding to the breach-of-contract verdict) falls within the ambit of section 523(a)(2), <u>see</u> Appellant's Brief at 5-6.

The court looks to Connecticut case law on issue preclusion.  <u>See</u> <u>Migra v. Warren City Sch. Dist. Bd. of Educ.</u>, 465 U.S. 75, 81 (1984).

> Under Connecticut law, collateral estoppel, or issue preclusion, prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action.  For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action.  It also must have been actually decided and the decision must have been necessary to the judgment. The doctrine of collateral estoppel is based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate.  An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined.  An issue is necessarily determined if, in the absence of a determination of the issue, the

7

judgment could not have been validly rendered.  In order for collateral estoppel to bar the relitigation of an issue in a later proceeding, the issue concerning which relitigation is sought to be estopped must be identical to the issue decided in the prior proceeding.  The court must determine what facts were necessarily determined in the first trial, and must then assess whether the party is attempting to relitigate those facts in the second proceeding.

New England Estates, LLC v. Town of Branford, 294 Conn. 817, 838–39 (2010)

(internal citations and alterations omitted).  "Relitigation of the issue in a subsequent

action between the parties is not precluded where the party against whom preclusion is

sought had a significantly heavier burden of persuasion with respect to the issue in the

initial action than in the subsequent action; or the adversary has a significantly heavier

burden than he had in the first action."  Cobb v. Pozzi, 363 F.3d 89, 113–14 (2d Cir.

2003) (quoting Restatement (Second) of Judgments § 28(4) (1982)) (quotation marks

and alterations omitted); see also Jackson v. R.G. Whipple, Inc., 225 Conn. 705, 714

n.5 (1993) (Connecticut "collateral estoppel [doctrine] tracks the language of the

Restatement").

The court agrees with Thompson that the evidence before the Bankruptcy Court

did not establish that there are no material issues of fact in dispute whether, as a matter

of issue preclusion or otherwise, the $23,160 corresponding to the breach-of-contract

verdict falls within section 523(a)(2)'s nondischargeability rule.

Concededly, among the allegations in Count Four of the April 2007 Action

Complaint are allegations that appear as if they could, if actually found by a finder of

fact, be the basis for subsequent issue preclusion as to the question of dischargeability

under section 523(a)(2).  See April 2007 Action Complaint ¶¶ 43–50.  However, the

appellees have not presented facts or argument sufficient to establish beyond dispute

that the jury rendered a verdict as to any particular one of these many allegations—or

how much in the way of damages the jury found that such misrepresentation caused.

The only evidence marshalled in support of this contention is a series of excerpts

amounting to more than fifty pages of trial testimony to the effect, the appellees say,

that:

> The only reasonable conclusion to draw from the evidence and the jury verdict is
> that the defendant induced the plaintiffs to enter into the settlement agreement
> with the clear intent to deceive and did in fact deceive the plaintiffs and the
> police. In the words of the defendant he entered into the agreement "to get the
> police off his back." By his deceit and trickery the defendant obtained credit to the
> value of the agreement, $20,000 to be paid pursuant to the terms of the
> agreement. He has retained the benefit and has refused to pay his debt to the
> plaintiffs.

See Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment at 10–

11 (citing Exhibit M, Bankr. Doc. No. 55 at 15–26, Exhibit M1, Bankr. Doc. No. 56, and

M2, Exhibit Bankr. Doc. No. 57).  However, even assuming the cited exhibits reflect

sufficient evidence for a jury to draw conclusions in accord with the appellees'

suggestions here, the summary judgment record lacks an affidavit, the remainder of the

trial transcripts, or other evidence establishing that the only evidence of fraud that the

jury might have found with its verdict was fraud in inducing the plaintiffs to enter into the

Settlement Agreement.  Some of the allegations relate to misrepresentations unrelated

to the entry into the Settlement Agreement.  See April 2007 Action Complaint ¶¶ 43–44.

Accordingly, the court cannot determine with certainty that the jury necessarily decided

this issue in the manner that the appellees claim it did.

Even if the court assumes that it is indisputable that the verdict in the April 2007

Action establishes that Thompson fraudulently induced the appellees to enter the

Settlement Agreement, the record is insufficient to warrant summary judgment because

9

the jury charge on the fraud count in the April 2007 Action does not confirm that the plaintiffs suffered any damages as a consequence of the fraud, or what the amount of such damages was.  Indeed, the court notes that the state court judge told the jury: "the plaintiff introduced no evidence of any monetary damage that were caused by [the alleged fraudulent] misrepresentation" (although this court cannot discern from the present record what the basis for this conclusion was), and that, as a consequence, "even if you find in favor of the plaintiff on Count 4 . . . you will be instructed to award only nominal damages."  Transcript of the Charge (Bankr. Doc. No. 55) at 9.  (It appears that it was on the basis of this instruction that the fraud verdict was only for one dollar.)  The appellees do not even attempt to explain away this instruction.  Given this instruction that the appellees did <u>not</u> prove damages based on any fraud allegation, it is impossible to see how the appellees can fairly contend that the $23,160 breach-of-contract judgment debt has been established to fall within the scope of section 523(a)(2)(A), which provides that a debt will be nondischargeable only "<u>to the extent obtained by</u>" fraud.  11 U.S.C. § 523(a)(2)(A) (emphasis added).

Furthermore, the jury charge on fraud only states the legal standard for the elements of fraud, <u>see</u> Transcript of the Charge at 8–9.  That is, unlike the charge as to the vexatious litigation count, <u>see id.</u> at 6–8, the fraud charge contains no specific reference to what factual allegations of fraud the jury would be finding.[5]  The verdict form/interrogatories are no more specific: they simply list the legal elements of fraud,

---

[5] The appellees represent that, "Counsel drew the court's attention to the heightened burden for fraud and the jury was re-charged as to that burden," citing "Exhibit J2," <u>see</u> Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment at 10 n.8, but this court discerns no such "Exhibit J2" among the appellees' filings.  In any case, appellees' counsel conceded at oral argument that the re-charge only clarified the applicable legal standard, not what the specific factual basis for the verdict might be.

but do not provide any way for the jury to state which of Thompson's acts or failures to act constituted fraud.  See Jury Interrogatories.

Nor have the appellees presented evidence from which the court can fairly say that the breach-of-contract verdict (rather than the fraud verdict) precludes Thompson from contesting the dischargeability of the $23,160.  In its instructions as to the breach-of-contract count, the state court did not, of course, instruct that the appellees had to prove the elements of fraud.  The judge simply instructed that, "[t]he plaintiff claims the defendant failed to perform and that such failure was a material breach in [sic] the settlement agreement.  If you find . . . that the defendant breached that agreement, then the plaintiff is entitled to recover damages as called for in that agreement."   Transcript of the Charge at 6.

In addressing the question of issue preclusion's application here, the Bankruptcy Court reasoned:

> the breach of contract and fraud verdicts . . . are inextricably linked.  Although the fraud claim was alleged in Count Four of the [April 2007 Action] Complaint, that count expressly incorporated all of the allegations contained in the prior counts, including the breach of contract claim in Count One.  Further, each of the counts in the [April 2007 Action] Complaint centered on the Settlement Agreement between the parties.  Thus . . . the fraudulent misrepresentation claims in Count Four . . . centered on the Settlement Agreement and by extension on the breach of the Settlement Agreement. . . . The jury was explicitly charged on the essential elements of Connecticut common law fraud and these elements are essentially the same as the elements of a nondischargeability claim under 11 U.S.C. § 523(a)(2)(A).

See Memorandum of Decision at 11–12.  Whether claims are inextricably linked is not, in this court's judgment, the appropriate inquiry.  The only "inextricably linked" standard of which this court is aware is that which applies under the Rooker-Feldman doctrine.  See Hachamovitch v. DeBuono, 159 F.3d 687, 694 (2d Cir. 1998).  That doctrine does

not apply to the same set of situations as issue preclusion; indeed, it is significantly broader.  See Moccio v. N.Y. State Office of Ct. Admin., 95 F.3d 195, 199 (2d Cir. 1996).

That one count in a complaint incorporates allegations made in earlier counts does not support the conclusion that the jury's verdict as to that count necessarily decided some allegation stated in an earlier count of the complaint.  The fraud count necessarily alleges elements different from or, at least in addition to, the breach-of-contract count.  Nor is it sufficient merely that "the fraudulent misrepresentation claims in Count Four . . . centered on the Settlement Agreement and by extension on the breach of the Settlement Agreement."  Memorandum of Decision at 11.  Unfortunately for the appellee, the case went to the jury on a complaint alleging several fraud theories, see April 2007 Action Complaint ¶¶ 43–50 (including, at paragraphs 43 and 44, allegations relating to acts long predating the negotiation of the Settlement Agreement).  The record does not establish that the case went to the jury solely on the specific theory that Thompson procured the Settlement Agreement itself (rather than some other benefit) by fraud.  Thus, at least on the record before the Bankruptcy Court and this court, a determination that the question whether Thompson obtained the Settlement Agreement by fraud was "actually litigated and decided" or "necessary to support" the prior judgment is precluded.[6]

In sum, on the record that was before the Bankruptcy Court, the grant of summary judgment on the basis of issue preclusion was not appropriate.  The case will

---

[6] The appellees argued at oral argument that the state court trial judge only submitted the Settlement Agreement basis for the fraud claim to the jury.  However, while this may be true, nothing in the record supports this argument.

thus be remanded for further proceedings on this claim.  See Archer v. Warner, 538 U.S. 314, 320–21 (2003).[7]

        3.        Alternative basis: "willful and malicious act"

The appellees argue that, assuming Thompson prevails on his second argument, affirmance of the Bankruptcy Court judgment is appropriate for a different reason: the grant of summary judgment was warranted because the undisputed facts establish as a matter of law that the debt is nondischargeable because it resulted from a willful and malicious act, as described in section 523(a)(6).  See Appellee's Brief at 4–5.  However, the court discerns no facts cited in support of this contention in the relevant section of the appellee's brief, nor in the relevant section of the Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment filed with the Bankruptcy Court, see Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment at 15–16 (merely asserting that "the defendant willfully breached the settlement agreement"), nor finally in the appellee's statement of undisputed facts submitted to accompany the same motion for summary judgment, see generally Local Rule 56(a)(1) Statement of Facts. Granting summary judgment is not appropriate where, as here, the moving party presents inadequate evidence in support of its alleged undisputed facts.

---

[7] Although Thompson did not raise this issue on appeal, the court notes that the determination that $1,698.20 award of costs is nondischargeable rested in part on the conclusion that the award corresponding to the fraud verdict was nondischargeable.  See Memorandum of Decision at 22.  Because the court now vacates the latter award, it also vacates the award of costs.  The Bankruptcy Court should determine anew whether, or to what extent, the finding of nondischargeability of costs remains appropriate in light of any subsequent proceedings as to the nondischargeability of the debt corresponding to the fraud verdict.

B.    <u>Vexatious litigation verdict</u>

The Bankruptcy Court also concluded that the doctrine of issue preclusion required it to find that the judgment debt of $45,000, corresponding to the verdict for the appellees on the count of vexatious litigation in the April 2007 Action, is nondischargeable under section 523(a)(6).  <u>See</u> Memorandum of Decision at 15–20. Thompson's only objection to the Bankruptcy Court's conclusion is as to one facet of the court's "identity of issues" analysis: he claims that the court erred in concluding that the jury's verdict against him on the vexatious litigation count was identical to the requirement under section 523(a)(6) that a debt be one for "willful and malicious injury" by the debtor.

The court first notes that Thompson presents no meaningful argument on this issue.  Instead, he first reiterates verbatim four sentences' worth of quotations of case law on the standard for malice in the section 523(a)(6) context from his Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment filed with the Bankruptcy Court.  <u>See</u> Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment at 9; Appellee's Brief at 6.  Next, he reiterates almost verbatim three more sentences' worth of quotations of case law on the same standard—this time from the Bankruptcy Court's Memorandum of Decision in support of its conclusion that the issue of malicious injury <u>was</u> actually decided in the verdict of the April 2007 Action.  <u>See</u> Memorandum of Decision at 18; Appellee's Brief at 6–7.  Finally, he quotes a portion of the jury charge (much of which the Bankruptcy Court's Memorandum of Decision also quoted) and advances some conclusory assertions that the Bankruptcy Court's analysis was wrong. <u>See</u> Appellee's Brief at 7 (quoting Transcript of the Charge at 6–7).

14

In sum, the court discerns in Thompson's brief no substantive argument that there was any particular error on this issue.  For this reason, the court concludes that Thompson has waived this argument.  See Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir. 1998) (issues "not sufficiently argued in the briefs are considered waived" and normally are not addressed on appeal); Amer. Tissue, Inc. v. DLJ Merch. Banking Partners, II, L.P., 2006 WL 1084392, at *6 (S.D.N.Y. Apr. 20, 2006) (applying Norton rule to district courts hearing appeals).

Moreover, the Bankruptcy Court's reasoning is correct on the merits.  For a debt to be nondischargeable under section 523(a)(6), it must be shown to be a "debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity."  Thompson's objection appears to be that the verdict in the April 2007 Action did not establish that he committed any "willful and malicious injury."  See Appellee's Brief at 6–7.  The judge in the April 2007 Action instructed the jury that, "[t]o establish a claim for vexatious litigation at common law one must prove, one, a want or a lack of probable cause[, n]umber two, malice[ a]nd, number three, termination of a prior action or termination of a suit in the plaintiff's favor."  See Transcript of the Charge at 6; cf. Vandersluis v. Weil, 176 Conn. 353, 356 (1978) ("A vexatious suit is a . . . malicious prosecution action . . . based upon a prior civil action . . . . To establish [this] cause of action, it is necessary to prove [1] want of probable cause, [2] malice and [3] a termination of suit in the plaintiff's favor.").  On the first two elements, the state trial judge specifically instructed (in reverse order):

> Malicious intent is an evil or improper intent to cause harm.  A person vexes
> another person when he annoys or irritates him. A malicious intent unjustly to vex
> and trouble another person is not merely an intent to cause him an annoyance,
> irritation and trouble, but an intent to do so in bad faith with the knowledge or

belief that there is no justification for doing so.

The plaintiffs here allege that [when] Mr. Thompson commenced and prosecuted the underlying action against them, he lacked probable cause because he lacked the knowledge of the facts sufficient to justify a reasonable person in the belief that the [predicate facts of his cause of action were true].

Transcript of the Charge at 6–7.  As for the standard under section 523(a)(6), the Second Circuit has established that "willful . . . injury" means "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury," Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir. 2006) (internal quotation marks omitted; emphasis in original), while "malicious injury" means injury that is "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will.  Malice may be implied by the acts and conduct of the debtor in the context of the surrounding circumstances," id. (internal citation, alteration, and quotation marks omitted).

The jury verdict establishes that bringing the lawsuit that was the subject of the vexatious litigation claim was an injury both "willful" and "malicious."  The jury verdict necessarily reflects a jury finding that the injury was "willful," i.e., "deliberate or intentional injury" (section 523(a)(6) standard), because it was instructed that, to find Thompson liable, it had to determine that he had an "intent to cause harm."  Similarly, it reflects a jury finding that the injury was "malicious," i.e., "wrongful and without just cause or excuse" (section 523(a)(6) standard), because it was instructed that, to find Thompson liable, it had to determine that he had acted "with the knowledge or belief that there [wa]s no justification for [the injury]."

Because of both of these independently sufficient reasons—waiver of the argument and the argument's inadequacy on the merits—the court affirms the

Bankruptcy Court's determination that the vexatious litigation verdict is
nondischargeable under section 523(a)(6).

IV.     CONCLUSION

        The Bankruptcy Court's judgment is **AFFIRMED IN PART** and **VACATED AND
REMANDED IN PART**.  As to the $45,000 debt associated with the vexatious litigation
verdict and the $1 debt associated with the fraud verdict, it is **AFFIRMED**; as to the
$23,160 debt associated with the verdict as to the count of breach of contract, the
$1,698.20 debt associated with the award of costs, and the $500 debt associated with
the clerical error in the state court judgment, it is **VACATED AND REMANDED**.

        **SO ORDERED**.

        Dated this 20th day of March 2015 at New Haven, Connecticut.


                                        /s/ Janet C. Hall_____
                                        Janet C. Hall
                                        United States District Judge